ELIZABETH MOORE *v.* MAMIE MOORE ECHOLS *et al.**

(*Nashville.* December Term, 1926.)

Opinion filed January 30, 1927.

1. DEED. Escrow. Grantee.

A grantee may hold a deed delivered in escrow. (Post, p. 54.)
Citing: Tanksley v. Tanksley et al., 145 Tenn., 468; 21 Corpus
Juris, p. 874.

2. SAME. Delivery. Promise of grantee.

If the intentions were to vest title, and at the same time a promise
was exacted not to record the deed during the life of the grantor,
the breach of such promise would not have the effect of divesting
title out of the grantee or revesting it in the grantor, the deed
being absolute and unconditional. (Post, p. 53.)
Citing: 21 Corpus Juris, 857, sec. 5; 18 Corpus Juris, 208.

3. SAME. Same. Reservation by grantor.

As in other forms of delivery, the intention of the grantor, as
evidenced by the circumstances surrounding the transaction af-
fords the true test. The reservation of the control by the grantor
may be evidenced by either words or acts or both. (Post, p. 53.)

4. SAME. Same. Same. Adverse holding.

Where a deed containing no condition or restrictions, but ab-
solute in form is executed by grantor and delivered to the gran-
tee and held for seven years without complaint, in order to in-
duce the court to hold the delivery upon condition, the evidence
must be clear, cogent and convincing. (Post, p. 52.)

5. SAME. Construction. Will.

A deed executed and delivered to grantee absolute, unconditional,
duly recorded and property held adversely, will not be construed

as a testamentary act, and revocable upon the breach of promise by grantor not to record same. (Post, p. 52.)

———————

*Headnotes 1. Deeds, 18 C. J., section 548; 2. Deeds, 18 C. J., section 548; 3. Escrow, 21 C. J., section 19; 4. Deeds, 18 C. J., section 116 (Anno.).

———————

### FROM SHELBY.

———————

Appeal from the Chancery Court of Shelby County to Court of Appeals and by Certiorari to Supreme Court.— Hon. I. H. Peres, Chancellor.

Bryan & Brode, for plaintiff.

Tom Bell and Taylor & Goodman, for defendant.

Mr. Justice McKinney delivered the opinion of the Court.

The purpose of the bill is to have a deed to a house and lot in Memphis, which complainant executed on February 8, 1916, to her daughter, the defendant, Mamie Moore Echols, decreed a will.

At the time of the filing of the bill, April 19, 1923, complainant was eighty years of age. The defendant, Mamie Moore Echols, was the youngest of eight children born to complainant, and had lived with her mother until about three years prior to the bringing of this suit. She left the home of her mother a few months after her marriage to her co-defendant, B. A. Echols, in September, 1920.

There is no suggestion that she procured her mother to execute said deed to her, or that her mother did not freely and voluntarily make the conveyance.

The complainant does not seem to be unfriendly towards the defendants, but the record contains some evidence that the complainant is dominated and controlled by other of her children, and was induced by them to institute this suit.

The instrument in question is as follows:

"THIS INDENTURE, Made this the 8th day of February, 1916, between Elizabeth Moore, a widow, of the county of Shelby and State of Tennessee, of the one part and Mamie Moore of the County of Shelby and State of Tennessee of the other part.

"WITNESSETH: That the said Elizabeth Moore, a widow, for and in consideration of ten ($10) dollars to her in hand paid, love and affection and other good and valuable consideration, hereby sells and conveys unto her daughter, the said Mamie Moore, to her sole and separate use free from the debts, contracts, marital rights and obligations of any future husband with the full right to sell and convey same as *feme sole,* her heirs and assigns forever, a certain lot or parcel of land situated in Memphis, Shelby County, Tennessee, and more particularly described as follows to-wit: (Here follows description.)

"This is the same lot that I have heretofore devised to my daughter, but which I now deed to her in order that she may collect the rents thereon if she sees fit and keep said store building upon said lot in such repair as she thinks best for her to do.

"To HAVE AND TO HOLD the aforesaid land, with all and singular the hereditaments and appurtenances of and to the same belonging to or in any wise appertaining to the said Mamie Moore to her sole and separate use, free from the debts and marital obligations of any

future husband, with the full right in my daughter, Mamie Moore, to sell and convey the same as a *feme sole,* and to her heirs and assigns forever, and the said Elizabeth Moore for herself, her heirs and representatives, doth covenant and agree to and with the said Mamie Moore, her heirs, and assigns that she is lawfully seized in fee of the aforesaid granted land and premises; that the same is free from all encumbrances and that she has a good right to sell and convey the same to her daughter, Mamie Moore, as aforesaid; and that the before granted land and premises she will warrant and forever defend against all lawful claims whatsoever.

"In Witness Whereof, the said Elizabeth Moore, a widow, has hereunto set her hand and affixed her seal the day and year above written.

Mrs. Elizabeth Moore.    (Seal)

Witness:

 Geo. W. Person."

The theory of the complainant is set forth in the following paragraphs of her bill:

"That said instrument was executed with the distinct understanding that said instrument of writing was not to be placed of record until after the death of complainant and that same was entirely revokable during the life of complainant; that this instrument would not be considered as divesting title out of complainant and vesting same into defendant daughter at any time prior to the death of complainant and title would only pass to the defendant daughter if complainant should leave said property intact.

"That on April 17, 1923, contrary to the understanding and conditions on which said instrument was delivered to defendant, and in open breach of faith with complain-

ant, defendant filed said instrument with the Register of Shelby County, Tennessee, for recordation, thereby attempting to vest title into herself as the owner in fee simple in said property.

"That said defendant, at the time said instrument was filed for record, knew full well that she had no right, title and interest in and to said property and that said instrument of writing was and always has been considered, not only by defendant, but all members of her family, to be in the nature of a will and not a deed, and, therefore, complainant charges that the filing of said instrument was done with the wilful intention of imposing upon complainant and defrauding her out of her rightful property.

"That no consideration whatever was given complainant for the execution of said instrument, but that same was executed and delivered to defendant daughter out of the love and affection complainant had for defendant daughter and a desire of complainant herein to see that defendant daughter was properly cared for and protected after the death of complainant, in the event that defendant daughter should at that time be a single woman and with no one to look after her."

The prayer of the bill is as follows:

"That upon final hearing of this cause, the court decree that said instrument or deed be construed as a will only and that it conveyed no title to the defendants and that no title is divested out of complainant and that complainant is the sole owner of said property in fee simple."

The Chancellor and the Court of Appeals concurred in holding that this instrument was a deed and not a will. The instrument, on its face, clearly shows this, and it is established by other evidence in the record.

The pertinent findings of the Chancellor are as follows:

"The complainant was the owner on February 8, 1916, of the property described in the original bill.

"On February 8, 1916, the complainant executed a deed of conveyance to the property described in the original bill to the defendant, Mrs. Mamie Echols, the youngest daughter of complainant.

"Within a few days subsequent to the date of the deed the complainant placed the same or caused it to be placed in the possession of the defendant, Mrs. Echols.

"At the time aforesaid the defendant, Mrs. Echols, was unmarried. She became married on September 28, 1920.

"The complainant did not make an absolute and unconditional delivery of said deed to said defendant, Mrs. Echols, but the delivery was conditional.

"The condition attached to the delivery of the deed was that the complainant reserved the right to recall it at her pleasure during life; that it should not be recorded but kept safely by the defendant during complainant's life unless recalled by her; and that if she should not recall it during life and should die leaving said defendant unmarried the latter should have the right to cause said deed to be filed for registration and to take possession of the property as her own.

"It was not the intention of the complainant that the title to the property described in the said deed should pass to the defendant at the time of its delivery. It was her intention that the deed should be operative to pass the title to the property to said defendant only in the event that she, the complainant, should die without recalling it."

While the Chancellor rejected the theory of the bill that the instrument invoked was a will and not a deed,

155 Tenn.—4.

he held that the gift was not complete, and that the deed was subject to recall. While there was no specific prayer for the relief granted, such relief might be granted under the prayer for general relief. In any event, no question was made as to this.

The Court of Appeals was of the opinion that the instrument involved was intended to be a deed, as appears upon its face, and not a will.

The Court of Appeals reached the further conclusion that the intention of the parties was that title should vest *in praesenti* upon the delivery of the deed, but that the grantor was to have the rents during her life; that the grantor instructed or requested the grantee not to record the deed during her life, and that the evidence was insufficient to sustain the claim of the grantor that she reserved the right to recall the deed.

After a careful consideration of the evidence, we are of the opinion that the Court of Appeals reached a correct result. The only fact about which the parties agree is that the grantor was to have the rents during her life. During the four years that Mrs. Echols lived with her mother, after the execution of the deed, she looked after her property, rented it out, collected the rents and paid them to her mother. That Mrs. Moore intended that title should vest finds strong support in the recitals in the deed, and in the further fact that by her will Mrs. Echols was to receive this property; this was explained to her when the deed was executed. Her personal attorney prepared both papers, and notwithstanding this explanation, which he made to her at the time, she insisted upon executing and did execute and deliver the deed. Her attorney was a man of large and extensive experi-

ence in drafting wills and deeds. If the agreement were as it is now insisted by the complainant, then the deed was only another will, and its execution in no wise changed the *status* of these parties with respect to this property. We cannot presume that a person does a thing in vain, and no satisfactory explanation is offered as to why Mrs. Moore should have gone to this extra trouble and expense when she accomplished nothing thereby.

With respect to the agreement to recall the deed, the evidence is far from sufficient to sustain this claim. This was the gravamen of the bill, but Mrs. Moore, in her original examination, made no such insistence. She testified as follows:

"Q. Do you still want the deed back Mrs. Moore? A. Well, I don't know. I want everything shared alike. I don't want to have no fuss with nobody, no hard feelings with nobody.

"Q. Did Mrs. Echols understand at the time you gave her this deed that you had the right to recall the deed at any time you wanted to? A. I don't know whether she understood it or not. I will tell you the honest truth about it.

"Q. Was that your intention? A. My intention was to share and share alike."

More than a year later she was again examined as a witness, and testified that it was a part of the agreement that she might recall the deed at any time.

This testimony was excepted to because evidence in chief, and the Court of Appeals ruled it incompetent, but held that, if competent, it was of little force in view of her previous testimony.

Where a deed containing no conditions or restrictions but absolute in form is executed by a grantor and delivered to the grantee, and held for seven years without complaint, in order to induce the court to hold the delivery upon condition the evidence must be clear, cogent and convincing. This requirement has not been complied with in this cause. It is probably true that the grantor did instruct the grantee not to put the deed of record during her life, and her reason for making this request was likely due to an apprehension that it might meet with the disapproval of some of her children, and cause friction.

It may be said that this court has adopted the general policy, in cases of this character, of ascertaining the purpose and intention of the parties and giving effect thereto. With this object in view the court held in *Tanksley* v. *Tanksley*, 145 Tenn., 468, that a deed can be delivered to the grantee upon condition.

While it is charged in the bill that it was understood that the deed was not to be recorded during the lifetime of the complainant, it is not charged that the deed was delivered upon the condition that if it were recorded the grantor reserved the right to recall same, and there is no evidence to that effect.

The theory of the bill is that the title never passed and that a right to recall at pleasure was reserved.

If the intention were to vest title and at the same time a promise was exacted not to record the deed during the life of the grantor, the breach of such promise would not have the effect of divesting title out of the grantee

and revesting it in the grantor. 21 Corpus Juris, 867, section 5.

The general rule upon this subject, supported by practically all of the authorities, is thus stated in 18 Corpus Juris, 208:

"The delivery of a deed by the grantor to a third person to be held by him and delivered to the grantee upon the grantor's death will operate as a valid delivery, where there is no reservation on the part of the latter of any control over the instrument, and under such circumstances it is usually held that the deed takes effect· from the first delivery. If, however, a power to recall the deed is reserved by the grantor, there is, according to the great weight of authority, no effectual delivery and the deed cannot take effect, although in a few cases a power upon the part of the grantor to recall the deed has been held not to invalidate the delivery, where such power was not exercised during the lifetime of the grantor. As in other forms of delivery, the intention of the grantor, as evidenced by the circumstances surrounding the transaction, affords the true test. The reservation of control by the grantor may be evidenced by either words or acts, or both.

"It is not essential to a valid delivery that the grantee knew of the existence of the deed before the grantor's death."

Under the foregoing authority, we are of the opinion that, had the complainant established her claim by satisfactory proof that the right to recall said deed any time during her life was expressly reserved, the decree of the chancellor would have been correct.

But in the instant cause we find that the grantor intended to complete the gift when she delivered the deed

to the grantee, and that the agreement or request not to record it during her life was not a condition upon which title should vest, or her right to recall might be exercised.

Another rule referred to by the Court of Appeals is thus stated in 21 Corpus Juris, 867:

"Many of the authorities make a distinction between cases where the future delivery is to depend upon the performance of some condition, and cases where it is to await the lapse of time or the happening of some contingency, holding that the former is an escrow, but that the latter will be deemed the grantor's deed presently. It has been held, however, even in some of the foregoing jurisdictions that this distinction is not correct, and that where the instrument is deposited to be held until the happening of a contingency, it is an escrow. The happening of the event upon which the instrument is to be delivered must be certain."

We find it unnecessary to adopt either of these views in this cause.

While the bill did not seek a reformation of the deed, so as to preserve a life estate in the complainant, the Court of Appeals held that the agreement as to rents estopped the defendants from depriving the complainant of the revenues from the property during her lifetime, and enjoined the defendants from encumbering or disposing of the property so as to deprive the complainant of this right. No complaint as to this is made by the defendants, and the conclusions of the Court of Appeals carries into effect the agreement of the parties and meets the equities of the cause.

It results that the petition for writ of *certiorari*, filed by the complainant, will be denied.